24-3572 Southern Iowa, Galtere v. Harvest Capital Asset Mgmt. et al. Good morning. May it please the court. My name is David Bauer, and I'm here on behalf of the appellate, in this case, Galtere, Inc. On one level, this case is very simple. It's about $802,000, and it is undisputed that my client, Galtere, provided that money to Harvest Capital starting in late 2007 and running through a portion of 2008. The issue here, ultimately, is can my client recover those funds, and more specifically, under the claims alleged? We would submit the district court erred in this case by finding that the party's agreement is exclusively memorialized in a one-page written transaction summary, and it's finding that that was a fully integrated document. We also submit the district court erred in finding that the funding that is referenced in that agreement, and specifically the conditions for repayment, apply here. And finally, even if the district court's ruling on our contract claims were to be upheld, with respect to our equitable claims, our position would be that the written agreement, the one-page documents, by its plain terms, applies only to the specific funding that's referenced in that agreement, and it's undisputed that that funding did not occur. So even if the court were to affirm the breach of contract claim, we submit that the district court's ruling on our equitable claims should be reversed and remanded. Moving along quickly, with respect to the contract claims, the issue on appeal ultimately here is what was the party's agreement? The district court, as I noted, found that the entire agreement between the parties was memorialized in the single-page transaction summary, finding that it was fully integrated. And under our law, that question, the preliminary question of whether an agreement is fully integrated, is a question that needs to be determined by the court initially, based on the totality of the evidence. The parole evidence rule does not come into play when ascertaining whether the agreement is integrated. And here, as we've outlined in our briefing, the evidence both before and after the execution of this document, and frankly the language of the document itself, show that it was not an integrated agreement. First, with respect to the document, it's a single page. It has minimal terms. There's no integration clause. And there's certainly nothing in that document that would suggest that it somehow applied to a portion of these funds that are at issue, which had already been paid by my client. Second, the history of the party's relationship here, again, both before and after this document was executed, is crucial to providing the totality of the circumstances. I'll be brief, because your honors have the facts, but this relationship began in 2007. There was discussions ongoing about my client potentially investing in a Brazilian farm. And the evidence presented by my client is that in late 2007, Harvest Capital told my client, hey, we need capital now to cover salaries and expenses for that farm, and presented the situation as dire. And that is when Galtier started loaning these funds. And in the record at page 326, there's a summary that shows when those funds were made. About a quarter of those funds were made before this single page written document was even executed. And the promise that was given at that time in 2007 was, we will repay those funds when this farm becomes profitable. So with respect to this written document, this written one page document, what is it? We've never argued that it isn't part of the party's agreement. But as my client presented evidence, this was one possible vehicle that the parties might use for purposes of investment. And as it turns out, even though they executed this agreement, the vehicle that was created, which we'll talk about, was never even utilized. The investment was done in an entirely different way. And so when that document was signed, it had very specific provisions that related to the creation of a particular investment fund. I'll call it graph or the fund. It's undisputed in the record that fund, which this one page document addressed, wasn't even created until May of 2008. By that time, almost half of the funds at issue had already been paid by my client to harvest capital. The repayment provision that the district court relied on is very specific. It talks about Galtier providing funding to, quote, the fund. And repayment obligation would be triggered when, quote, the fund begins to generate fees. It is undisputed the fund was never funded. It's undisputed the fund never generated fees. It's undisputed the fund never did anything. The parties went in a different direction. And even after the single page document was executed, Galtier continued to provide a portion of these disputed funds to harvest capital directly. Not through a fund, as the agreement would have contemplated. In all of those facts put together, your honors, we think establishes very clearly that this single page summary document, while part of the party's agreement related to something very specific that never happened. It says nothing about the promise that was made months before this agreement was executed. The promise in response to which Galtier performed for months by providing capital. And by its very terms, applies specifically to a scenario where funds were provided to the fund that had been created and then were paid out. It's undisputed none of that ever happened. And so our position- How this particular document was fully integrated, given the fact that it contains within its terms a number of agreements to agree upon things in the future. Which is, I don't know, when I went to law school, contracts to contract in the future weren't contracts. It contains a provision that says the parties will eventually agree to create an entity. And it doesn't provide what that entity is or how it's supposed to be put together. And it says that when it becomes profitable, without ever describing how it becomes profitable under what circumstances, then we're going to recapture whatever money's been in there. And it sets up a monthly budget which doesn't look at anything at all like the $802,000 it was eventually paid. And yet the court says that's a fully integrated contract and no parole evidence may be used to modify its terms. Well, how in the world did the court ever explain how such a contract could ever be enforced in any place in the world? Because I'm looking at this as just saying, you know, sat in a lot of courtrooms during the course of my lifetime. And I'm looking at this thing. It says whatever the amount of indefinite is that is going on here, it can't be fully integrated. Because I'm left with a series of at least 20 questions before I can figure out who gets paid what and where and when. Correct. And in response to your question, Judge Erickson, our position is the district court didn't provide any explanation. I think in the initial ruling with respect to the contract claims, there wasn't even a discussion by the court that the contract was fully integrated. The subsequent ruling on the equitable claims got into that a little bit more. But our position is you're absolutely correct. The document was pled as a contract. The parties have agreed that at least some of its terms make up a portion of the party's agreement. But with respect to integration, I'm used to seeing 18-, 25-, 30-page documents for a fully integrated agreement. So your point is well taken on that. I think even in spite of that fact, what we would come back to with the document, yes, it's not fully integrated. We need to look at all the context. But even if you look at the language the district court relied on, it was specifically and expressly limited to this particular vehicle if it moved forward. The evidence shows that that vehicle was created months later, never funded, and the party simply went in a different direction. And so I want to leave myself a brief rebuttal. And so I will conclude there and note our request is for this court to reverse the district court and remand all claims back to the district court for further proceedings. Thank you. May it please the court, counsel. My name is Brant Kaler, and I'm here on behalf of the Harvest Capital defendants in this matter. Your honors, as the district court noted, this case rises and falls with the one-page transaction summary written contract. That is a contract that was signed by all of the parties, and it contains three discrete sections. The first two sections apply to the party's agreement to create the Galtier Real Assets Funds, which we will all refer to as GRAF for simplicity purposes, for the purpose of investing in Brazilian agriculture. And importantly, in those two sections, your honors, there is an agreement by Harvest Capital to work exclusively for GRAF. And in exchange, GALTIER then agreed to fund a monthly budget for GRAF, which the parties expressly agreed would be recovered when GRAF begins to generate fees. The final section of the transaction summary dealt with an entirely separate investment by GALTIER in an entity called Two Rivers Farms. Two Rivers Farms was created in Brazil in 2005, over three years before the GRAF investment came to be, and GALTIER agrees that the Two Rivers Farms is a completely separate transaction from GRAF. And importantly, your honors, when you look at this transaction summary, while there are two investments contained in the transaction summary, there is not a third. There is not GRAF, Two Rivers Farms, and then some other generic Brazilian agriculture investment. There is just GRAF and Two Rivers Farms. As counsel stated, GRAF funded $802,000 from December of 2007 through December of 2008, so both before and after the transaction summary was executed. It is undisputed that GRAF never generated any fees. Thus, under the transaction summary, GALTIER does not have the right to recover its funded $802,000. I'll say that again, your honor. This is an uncomplicated case. GRAF never generated fees. GALTIER can't recover its $802,000, and the district court should be affirmed. On the question of whether it's fully integrated, you heard Judge Erickson's question, right? I'm sorry, what was your question, your honor? Did you hear Judge Erickson's question to your opponent's counsel? Yes, sir. I think maybe you might want to respond to that. Right, so when we talk about integration under Iowa law, first of all, there is precedent from the Whalen case that although integration looks at the totality of evidence under five factors, that with undisputed facts, whether a contract is integrated or not can be determined by district court on summary judgment. There are five factors that deal with integration. The first factor is whether or not the contract is handcrafted. The answer here is undisputed. It was handcrafted by the parties. The second factor is the sophistication of the parties. I think everybody here would agree that these are two very sophisticated commercial entities. The third factor is the relative bargaining strength between the parties. Here, at best, the parties have equal bargaining strength. At worst, GALTIER certainly would have had more bargaining strength than Harvest Capital. Then there's the presence of any integration clause. It's undisputed there's no integration clause in the contract. However, the Iowa Supreme Court in the Candy case said that's not dispositive of the integration issue. And then finally, and probably most importantly, it's whether the terms of the alleged oral agreement would be expected to be included in the agreement. And here we have a dispute about when GALTIER is entitled to repayment of the money that they've loaned. And that term is expressly included in the transaction summary. The transaction summary says GALTIER does not get repayment of their $802,000 unless and until GRAF begins to generate fees. You know, I just want to push back just a little bit. I want to ask you a question. It's like, it still has to be a contract, right? The fully integrated agreement has to be a contract. It has to be an agreement. It has to be a bargain for this or that kind of thing, right? Certainly, Your Honor. We talked about integration. And, you know, if we look at just ordinary contract principles. And understand this. This is not a contract for the sale of goods for which the UCC is going to allow you to stick in terms that the parties don't agree to. This is a series of agreements to develop some property and to extract profits and foods and lumber from that property, right? Yes. I think that's the purpose, okay? Yes. And it's got to be definite enough that it actually looks, sounds, and is a contract. And I keep looking at this thing. And it just says there are agreements to agree in the future, at least a couple of them, right? There's no definiteness on who's supposed to get when, repaid, and when. There's no explanation of what is the meaning of the word profitability and when does the fund become profitable and in what circumstances. There's nothing that explains that there may be parallel devices that are moving around and people are throwing money into outside of this, right? None of that's in here. And how can you then say, well, this is a fully integrated agreement for which we can't look at plural evidence? I mean, I'm just having a hard time following that. I mean, it just keeps, I keep looking at it and saying, whatever this thing is, it is a right insufficient to satisfy a statute of frauds problem. I'll concede that. But I'm looking at its indefiniteness and I'm saying, how does this really look like any kind of an integrated contract that anyone's ever seen? And if I could address your question, Judge Erickson, I have three things to say in response. First, I think it is crucial that this court remembers, it is the plaintiff who said that this is a contract that governs the loan that they made to Harvest Capital. In count one of their complaint, they pled a breach of express written contract claim and they attached this transaction summary as Exhibit C to the complaint and said, this is the contract that governs the loan that Galtier made to Harvest Capital. Second, your honor, when you're talking about integration and whether the contract is complete or not, the only term or the only issue before the court here today is upon what condition Galtier is entitled to repayment. And that language is that when graph begins to generate fees. And I don't think that there's anything unambiguous about that. And I don't think that Iowa law allows extrinsic evidence of prior or contemporaneous discussions to change or modify the express language of the contract. I believe that the language we cited from the Iowa Supreme Court is from the McNeil case. And even if the contract is not fully integrated, and even if the court does look at extrinsic evidence, the McNeil case says extrinsic evidence may be offered to show the meaning of what the party said, but not to show what they meant to say. And here the express language of the contract is that Galtier is not entitled to recover the money loaned unless and until graph begins to generate fees. Was $802,000 part of a monthly budget? If you look at the, and Mr. Bauer referenced this in his argument, there were payments made on a nearly monthly basis from December of 2007 through December of 2008. So over the course of that roughly 12-month period of time. And that's the other important thing, Your Honor. The district court noted this as well. The fact that you had payments that were made. I think Mr. Bauer said a quarter of the payments were made beforehand. And then you have the parties get together and put together an agreement that they agree upon the terms that everybody signs. And then they continue to make payments after that. So that in and of itself, the fact that there are payments before and after, all in the same group of payments, all in the same group of funds. But the fund wasn't created yet. Graph was not created at the time the $802,000 was. The actual fund was created before the end of the payments were made. It was not created at the time the first payment was made. But you have to keep this in context as well. Galtier loved this Two Rivers Farm that was already in existence that Harvest Capital was managing. And they said, we want to replicate this. We want to do this again. So these payments that are being made to Harvest Capital are being made to try and get this fund off the ground. So they are paying Galtier hard costs to go out and try to recruit investors. And ultimately, unfortunately, the investment never worked out and the fund didn't get up and going. But the parties agreed because of that, Galtier is going to pay Harvest Capital to work exclusively for them to try and get this fund off the ground. And if that agreement doesn't work, the fund that would generate its fees, Harvest Capital, doesn't have to pay this money back. Just like any normal investment decision. I see I'm out of time, guys. I thank you for your time today. I ask that the district court be affirmed in all regards. Thank you. As I met less than a minute, I'm compelled to be brief. I did just want to follow up very briefly on a couple of points. Setting aside the issue of integration and the district court's ruling on that question. Again, we summarized the context and the history of the party's relationship, which is important to look at in the context of the actual language upon which the district court based its decision. This is a March 25, 2008 writing in which Galtier is agreeing in the future we will fund an agreed upon monthly budget for the fund. This document says nothing about the prior funds that had already been being provided, several hundred thousand dollars, pursuant to another promise. The district court said nothing about the fact that there is no evidence there was ever an agreed monthly budget. Payments were made based on the request that Harvest Capital made to keep the farm afloat. And none of these funds ever went to the fund, which is what would be necessary to even fall under this document in the first place. Unless there are questions, I see my time has expired. Thank you. Hearing none, thank you. Court appreciates your appearance and argument today. Case is submitted and we will issue an opinion when we can.